**NEWMAN, SAUNDERS & CO., Inc., v. UNITED STATES.**

Court of Claims.   December 23, 1929.

No. J–194.

McLaughlin, Knollenberg, Royce & Leisure, of New York City (Bernard Knollenberg, of New York City, of counsel), for plaintiff.

R. C. Williamson, of Washington, D. C., for the United States.

Before BOOTH, Chief Justice, and GRAHAM and GREEN, Judges.

GREEN, Judge.   The plaintiff in this case seeks to recover $13,846.54, being the amount of income tax collected from it in the year 1928, under section 204 (a) (8) of the Revenue Act of 1924 (26 USCA § 935 (a) (8).   The issue in the case is whether this

provision of the Revenue Act is constitutional.

The facts in the case are not in dispute. It appears that plaintiff was incorporated on July 1, 1922, and thereafter was engaged in business as a stock and bond broker and dealer in investment securities. On said date, plaintiff acquired, solely in exchange for its capital stock, certain securities and other property from the partnership of Isidore Newman & Son, and J. K. Newman and Paul H. Saunders, individuals, who are hereinafter referred to as the transferors. The stock received by each transferor was substantially in proportion to his interest in the property exchanged, and immediately thereafter the transferors were in control of the corporation. The par value and the fair market value of the capital stock issued by plaintiff for said securities were the same as the fair market value of the securities acquired, being, in each case, $288,140. In 1924 plaintiff sold the securities so acquired for $408,392.45. The cost of the securities to the transferors was $191,309.33, and the Commissioner of Internal Revenue held that a taxable gain had been realized by the plaintiff on said sale in the amount of the difference, which was $217,083.12, using the cost of the securities to the transferors as the basis for computing gain, and assessed plaintiff's income tax accordingly. The Commissioner's ruling was made under section 204 (a) (8) of the Revenue Act of 1924 (26 USCA § 935 (a) (8), above referred to, which provides as follows:

"Sec. 204. (a) The basis for determining the gain or loss from the sale or other disposition of property acquired after February 28, 1913, shall be the cost of such property; except that—

*  *  *  *  *

"(8) If the property (other than stock or securities in a corporation a party to a reorganization) was acquired after December 31, 1920, by a corporation by the issuance of its stock or securities in connection with a transaction described in paragraph (4) of subdivision (b) of section 203 (including, also, cases where part of the consideration for the transfer of such property to the corporation was property or money in addition to such stock or securities), then the basis shall be the same as it would be in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor upon such transfer under the law applicable to the year in which the transfer was made."

It will be observed that the application of the provisions above quoted with reference to the gain on the sale or exchange of property depends on section 203 (b) (4) of the same act (26 USCA § 934 (b) (4), which reads as follows:

"(4) No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation; but in the case of an exchange by two or more persons this paragraph shall apply only if the amount of the stock and securities received by each is substantially in proportion to his interest in the property prior to the exchange."

Section 202 (c) (3) of the act of 1921 (42 Stat. 230) contains a provision similar in effect to that contained in the paragraph quoted next above.

In the instant case, the property (securities) was transferred to a corporation by persons "solely in exchange for stock or securities in such corporation, and immediately after the exchange such * * * persons" were "in control of the corporation," and the amount of stock received by each was "substantially in proportion to his interest in the property prior to the exchange."

It will be observed that the original exchange of the securities for stock was made in 1922. The 1924 act was retroactive in its provisions with reference to determining the basis for computing gain or loss on exchange or sale of property, but, so far as the exchange of securities for stock is concerned, it is immaterial whether the provisions of the 1921 or 1924 act are applied. The provisions in each are substantially the same, and, under either act, no gain or loss would be recognized with reference to the exchange, and there would be no tax upon it. The sale of the securities was made in 1924 by the corporation to which they had been transferred and the tax thereon was controlled by section 204 (a) (8) of the act of that year which is quoted above. Following its provisions, the Commissioner held that, when the corporation sold the securities, the basis for determining its gain was the same as it would have been in the hands of the transferor; or, in other words, the basis for computing the gain was the original cost to the transferor of the securities exchanged. The statute also provided that this basis should be "increased in the amount of gain or decreased in the amount of loss recognized to the transferor upon such transfer"; the transferor in the case at bar being the party who transferred the securities to the corporation in exchange

for stock. As both section 202 (c) (3) of the Revenue Act of 1921 (42 Stat. 230) and section 203 (b) (4) of the act of 1924 (26 US CA. § 203 (b) (4), provided that no gain or loss should be recognized on the kind of transfer under consideration, there was nothing to be added or substracted from the cost of the securities to the original transferor in arriving at the basis for the determination of gain or loss to ·the plaintiff upon the sale made by it.

The plaintiff corporation contends that the basis from which gain or loss should be measured is the cost of the securities to it at the time of the exchange, which, as before stated, was $288,140, and that the provision of the act under which the Commissioner computed the gain upon its sale of the securities which it had received is unconstitutional.

Three propositions are laid down to support this contention: First, that Congress cannot tax, as income from the sale of property, an amount greater than the excess of the selling price over the cost to the party making the sale; second, that the cost to a corporation of property acquired by it in exchange for stock is the value of the stock issued for the property; third, that Congress cannot under the circumstances of the present case disregard the corporate entity.

It is argued on behalf of plaintiff that the increase in value which occurred before the securities were exchanged became capital in the hands of plaintiff when it received the stock, and to put a tax upon this gain was a tax upon capital instead of income. We do not think this follows. In one sense, all income becomes capital when received, but this does not prevent the government from laying a tax upon it. We think the precise question involved in this case has been completely settled by the decisions of the Supreme Court. In United States v. Phellis, 257 U. S. 156, 171, 42 S. Ct. 63, 66, 66 L. Ed. 180, the Supreme Court said:

"Where, as in this case, the dividend constitutes a distribution of profits accumulated during an extended period and bears a large proportion to the par value of the stock, if an investor happened to buy stock shortly before the dividend, paying a price enhanced by an estimate of the capital plus the surplus of the company, and after distribution of the surplus, with corresponding reduction in the intrinsic and market value of the shares, he was called upon to pay a tax upon the dividend received, it might look in his case like a tax upon his capital. But it is only apparently so. In buying at a price that reflected the accumulated profits,

he of course acquired as a part of the valuable rights purchased the prospect of a dividend from the accumulations—bought 'dividend on,' as the phrase goes—and necessarily took subject to the burden of the income tax proper to be assessed against him by reason of the dividend if and when made."

In the case at bar, when the plaintiff acquired the securities involved, it took them subject to the burden of the income tax which might properly be assessed against a corporation receiving securities under the circumstances existing in this case. It is true the facts in the Phellis Case were quite different from those in the one now before us, but the principle which we have outlined above was elaborated and made clear in Taft v. Bowers, 278 U. S. 470, 49 S. Ct. 199, 201, 73 L. Ed. 469.

The last-named case involved the taxable gain realized upon the sale of property which had been received as a gift, and the court held that the basis for determining the gain was, under the statute, the same as that in the hands of the donor. It was urged in that case on behalf of the taxpayer, as in this, that the increase in value of the property conveyed while the same was in the hands of the donor was capital and could not be taxed, and that a taxpayer could have no gain until the proceeds of the sale exceeded his cost, but the Supreme Court said:

" * * * By requiring the recipient of the entire increase to pay a part into the public treasury, Congress deprived her of no right and subjected her to no hardship. She accepted the gift with knowledge of the statute and, as to the property received, voluntarily assumed the position of her donor. When she sold the stock she actually got the original sum invested, plus the entire appreciation and out of the latter only was she called on to pay the tax demanded.

* * * * * *

"There is nothing in the Constitution which lends support to the theory that gain actually resulting from the increased value of capital can be treated as taxable income in the hands of the recipient only so far as the increase occurred while he owned the property. And Irwin v. Gavit, 268 U. S. 161, 167, 45 S. Ct. 475, 69 L. Ed. 897, is to the contrary."

Following the rule laid down in the cases above cited, we hold that the tax involved was not a tax upon capital, but a deferred tax upon profits, and one which was within the power of Congress to levy.

The principles that determine adversely the first of plaintiff's objections also dispose of the second proposition presented. The

Commissioner did not take as the basis for computing gain the value of the stock at the time of the exchange, and his action was correct under the rule hereinabove laid down. For convenience in computing the gain, the basis is taken as the cost of the securities received by the corporation to the original transferor, but this is merely another way of saying that the corporation took the securities subject to any tax that might subsequently be levied on all the gain that had accrued from the time that the transferor acquired the securities. We do not think that this ignores the corporate entity. It merely recognizes the fact that in making the exchange the original transferor had simply received another instrument which evidenced the same or at least a corresponding right to the same property. Here again we find there is nothing unconstitutional in the statute.

█ It is also urged on behalf of plaintiff that, if the rule laid down by the Commissioner be followed, it will result in double taxation. The contention in effect is that the construction we have given to the provisions of the statute involved do not prevent a tax being imposed upon the original transferor for the gains which had accrued on the property transferred up to the time the exchange was made with the corporation. But we have already shown that, so far as both parties to the exchange are concerned, in a case like the one at bar, no gain or loss is recognized upon the exchange. The rule is simply that in such cases the original transferor does not pay any tax on the gain which has accrued while he held the property, but the tax is deferred to be paid by the corporation receiving the property. It should be observed in this connection that, if the situation was such that it would not come under the provisions of section 203 (b) (4), that is, if the parties making the exchange were not immediately thereafter in control of the corporation, or if the stock and securities received by each were not substantially in proportion to his interest in the property exchanged, the rule would be different. In such event, a tax would be assessed against the original transferor upon the gain up to the time of the exchange, and the basis for the tax levied against the corporation upon its sale of the property which it had received would be taken as of the time when the exchange occurred. In neither case would there be any double taxation.

Following the authorities above cited, we hold that the provisions of the statute in question are not unconstitutional. The parties having stipulated that, if these provisions are constitutional, the tax was properly assessed, it follows that plaintiff's petition must be dismissed, and it is so ordered.

BOOTH, Chief Justice, and GRAHAM, Judge, concur.

WILLIAMS and LITTLETON, Judges, did not hear and took no part in the decision of this case.